**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000801
30-NOV-2017
08:51 AM**

NO. CAAP-16-0000801

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
SELVIN SAMAEL DAVILA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 15-1-0965(1))

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Selvin Samael Davila (**Davila**) appeals from the Judgment Conviction and Sentence (**Judgment**) entered on September 16, 2016, in the Circuit Court of the Second Circuit (**Circuit Court**).[1] After a jury trial, Davila was found guilty of one count of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, pursuant to Hawaii Revised Statutes (**HRS**) § 707-733.6 (2014), and sentenced to twenty years of incarceration with credit for time served.[2]

---

[1] The Honorable Rhonda I. L. Loo presided.

[2] HRS § 707-733.6 provides in relevant part:

> **§ 707-733.6 Continuous sexual assault of a minor under the age of fourteen years.** (1) A person commits the offense of continuous sexual assault of a minor under the age of fourteen years if the person:

(continued...)

On appeal, Davila contends that the Circuit Court's failure to strike certain inadmissible testimony of Dr. Alexander Bivens (**Dr. Bivens**) related to the dynamics of child sex abuse denied Davila of a fair trial.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Davila's point of error as follows:

During testimony regarding common behavior of child sex abuse victims, Dr. Bivens testified:

> There is a phenomenon called incomplete initial disclosure, sometimes also called partial disclosure, which refers to the frequently observed pattern whereby a child who has some sexual abuse to talk about will begin to talk about it tentatively at first. The word 'touching' is most frequently used, even when the abuse involves much more elaborate kinds of sex.

Davila objected. A bench conference was held, and the following exchange occurred:

> [DEFENSE COUNSEL]: Again, he's insinuating that -- for instance, this complaint -- well, what the State wants the jury to understand is that this complainant -- I guess, they think that she disclosed piecemeal. He's saying that they disclose piecemeal and they start with 'touching' but something probably worse happened and so the jury is going to use that against my client assuming something worse has happened.
>
> [THE STATE]: The Court has already ruled based on our motion in limine that piecemeal disclosure -- and I am -- and partial disclosure, which is the same thing, is a permitted area. He is discussing that in general. He knows nothing about the case and he knows nothing about the specific facts of this case. He's describing what a child's experience is and how a child discloses.

---

[2] (...continued)
    (a)    Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and
    (b)    Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, while the minor is under the age of fourteen years.

> He did use the word 'touching.' Then he talks about how -- is explaining the possibility that even if it's a penetration offense, they're using a more benign word. That's something that is within the purview of the jury. This is piecemeal disclosure defined.
>
> [DEFENSE COUNSEL]: But the jury knows the facts they heard so far and the prosecutor is tailoring her questions to specifically fit the facts.
>
> THE COURT: Sustain the objection.
>
> [THE STATE]: I asked -- okay. How can I ask him to describe 'piecemeal disclosure'?
>
> THE COURT: I'm not going to tell you how to ask your questions.
>
> [THE STATE]: Okay. I'll just ask it again. Thank you, your Honor.

Although the court sustained Davila's objection at the bench, the defense did not move to strike Dr. Bivens's testimony and the court did not *sua sponte* strike the testimony or instruct the jury to disregard the testimony. Subsequently, the State rephrased its question and continued in the same line of questioning, without further objection.

On appeal, Davila argues that Dr. Bivens's testimony suggested that "more elaborate kinds of sex" occurred in this case and that this suggestion was powerful and misleading, that it prejudiced Davila, and that it improperly bolstered the credibility of the complaining witness (CW) and discredited Davila.

On appeal, the State argues, in part, that this issue is waived because Davila did not move to strike the testimony or seek a curative instruction. See State v. Hashimoto, 46 Haw. 183, 195, 377 P.2d 728, 736 (1962) (noting that, when there is no motion to strike an unresponsive or improper answer to a proper

question, the appellate court will generally not consider whether the answer was prejudicial).

We conclude, however, that even assuming *arguendo* that the Circuit Court erred in failing to *sua sponte* strike Dr. Bivens's testimony regarding more elaborate sex, that such error was harmless.

"In determining whether improper remarks made by a witness constitutes reversible error, the appellate court will consider: (1) the nature of the misconduct; (2) the promptness of a curative instruction, or lack of it; and (3) the strength or weakness of the evidence against the defendant." State v. Webster, 94 Hawai'i 241, 248, 11 P.3d 466, 473 (2000) (citing State v. Samuel, 74 Haw. 141, 148-49, 838 P.2d 1374, 1378 (1992) (internal quotation marks omitted)). In Webster, a witness inadvertently made an inadmissible reference to a polygraph examination of another witness. Id. at 247, 11 P.3d at 472. The defendant argued that this bolstered the other witness's testimony. Id. at 248, 11 P.3d at 473. The Hawai'i Supreme Court ruled that the error was harmless because (1) the nature of the misconduct was inadvertent, (2) the trial court promptly cautioned the jury to disregard the statement, and (3) the evidence was ample to sustain a conviction. Id. at 248-49, 11 P.3d at 473-74.

Here, Dr. Bivens did not comment on the evidence in this case or the credibility of the witnesses. Rather, Dr. Bivens testified that he had never met, seen, interviewed, or evaluated the child in this case, that he did not know any of the

details of the case, and that he had not seen any evidence from this case. The brief reference to more elaborate kinds of sex, as opposed to touching, was later restated by Dr. Bivens, without objection, as follows: "[O]nly upon subsequent interviews and after some time has passed . . . are [children] able to disclose in more detail . . . much more of what kinds of sexual abuse was done to them." Dr. Bivens's testimony did not constitute intentional misconduct and did not suggest any particular sexual conduct by Davila. Nor did it tend to prove that the alleged sex abuse occurred or bolster CW's testimony regarding the alleged acts. In this case, CW testified to both sexual contact and sexual penetration, whereas Davila denied any such contact. Under HRS § 707-733.6, the charged offense involves three or more acts of sexual penetration or sexual contact with a minor while the minor is under the age of fourteen years. Thus, sexual contact, i.e., touching of the minor's sexual parts, was sufficient for conviction and Dr. Bivens's testimony regarding more elaborate kinds of sex was harmless.

Regarding the second factor, there was no curative instruction to the jury.

However, the evidence in this case was ample to sustain a conviction. CW testified in detail as to three separate incidents in which Davila sexually abused her at the home he shared with CW's grandmother, once on the couch and twice in a spare bedroom. The State's impeachment of the defense's witnesses through demonstration of inconsistences and other weaknesses strengthened the prosecution's case. In addition,

CW's mother testified that CW had informed her of the incidents, CW's mother confronted the grandmother with what CW had reported, and that she, CW's mother, had hoped that her discussions about them with the grandmother would "take care of it."

Considering the above, and the entire record in this case, we conclude that it is not reasonably possible that the error complained of contributed to Davila's conviction. See State v. McDonnell, No. SCWC-14-0000355, 2017 WL 3700812 at *17-18 (Haw. Aug. 28, 2017); State v. Kassebeer, 118 Hawai'i 493, 505, 193 P.3d 409, 421 (2008).

Accordingly, the Circuit Court's September 16, 2016 Judgment is affirmed.

DATED: Honolulu, Hawai'i, November 30, 2017.

On the briefs:

Keith S. Shigetomi,
for Defendant-Appellant.

Peter A. Hanano,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge